IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

KELLY HEMPHILL,                    )
                                   )
           Plaintiff,              )
                                   )
v.                                 )    Case No. 10-1332-JAR
                                   )
MICHAEL J. ASTRUE,                 )
COMMISSIONER OF                    )
SOCIAL SECURITY,                   )
                                   )
           Defendant.              )

## MEMORANDUM AND ORDER

In July 2008, plaintiff Kelly Hemphill applied for supplemental social security income under Title XVI of the Social Security Act, 42 U.S.C. §1381 *et. seq.*,[1] alleging a disability onset date of June 18, 2008, the date he was injured in a motorcycle accident, which required a below the knee amputation of his right leg. His application was denied initially and on reconsideration. The Appeals Council denied plaintiff's request for review; thus, the matter is before the Court on appeal from the decision of the Administrative Law Judge (ALJ).

**I.     Standard of Review**

Under 42 U.S.C. § 1383(c)(3), the final determination of the Commissioner is subject to review as provided in 42 U.S.C. § 405(g). Judicial review under 42 U.S.C. § 405(g) is limited to whether defendant's decision is supported by substantial evidence in the record as a whole and whether defendant applied the correct legal standards.[2] The Tenth Circuit has defined

---

[1]Plaintiff also filed an application for disability benefits under Title II, but his claim was denied because his insured status under Title II expired on June 30, 2000. Plaintiff did not further pursue that application and it is not before the Court for review.

[2]*See White v. Massanari*, 271 F.3d 1256, 1257 (10th Cir. 2001) (citing *Castellano v. Sec'y of Health & Human Servs.*, 26 F.3d 1027, 1029 (10th Cir. 1994)).

"substantial evidence" as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[3] In the course of its review, the court may not reweigh the evidence or substitute its judgment for that of defendant.[4]

## II. Framework for Analyzing Claim of Disability

Under the Social Security Act, "disability" means the that the individual is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . ."[5] An individual "shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ."[6]

The Secretary has established a five-step sequential evaluation process to determine whether a claimant is disabled.[7] If the ALJ determines the claimant is disabled or not disabled at any step along the way, the evaluation ends.[8] Step one determines whether the claimant is presently engaged in substantial gainful activity.[9] If not, the decision maker continues under step two to determine whether the claimant has a medically "severe" impairment or combination of

---

[3] *Id*. (quoting *Castellano*, 26 F.3d at 1028).

[4] *Id*.

[5] 42 U.S.C. § 1382c(a)(3)(A).

[6] *Id*. § 1382c(a)(3)(B).

[7] *Thompson v. Sullivan*, 987 F.2d 1482, 1486 (10th Cir. 1993).

[8] *Id*.

[9] *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988).

impairments.[10] The claimant must "make a threshold showing that this medically determinable impairment or combination of impairments significantly limits his ability to do basic work activities, i.e., ' the abilities and aptitudes necessary to do most jobs.'"[11] This determination is based solely on medical factors, irrespective of vocational factors such as age, education, and work experience.[12] If such a showing is made, the decision maker proceeds to step three.

At step three, the decision maker "determines whether the impairment is equivalent to one of a number of listed impairments that the Secretary acknowledges are so severe as to preclude substantial gainful activity."[13] If the impairment meets or equals those listed, the claimant is disabled. If not, the analysis proceeds to step four where the decision maker considers whether the impairment prevents the claimant from performing work that he has performed in the past.[14] "At step four, an 'ALJ must evaluate a claimant's physical and mental residual functional capacity (RFC).'"[15] The RFC represents "the most that [the claimant] can still do despite [his] limitations,"[16] and "must include all of the claimant's medically determinable impairments."[17] "If the claimant's RFC permits him to perform his prior work,

---

[10]*Id.*

[11]*Id.* at 750–51 (quoting 20 C.F.R. §§ 404.1521(b), 416.921(b) ((1986)).

[12]*Id.* at 750.

[13]*Id.* at 751.

[14]*Id.* (quoting *Bowen v. Yuckert*, 482 U.S. 137, 141 (1987)).

[15]*DeWitt v. Astrue*, 381 F. App'x 782, 784 (10th Cir. 2010) (quoting *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008)); SSR 96-8p, 1996 WL 374184, at *1–*2 (July 2, 1996).

[16]20 C.F.R. § 404.1545(a)(1); *see DeWitt*, 381 F. App'x at 784 (quotation and citations omitted).

[17]*DeWitt*, 381 F. App'x at 784 (citing 20 C.F.R. § 404.1545(a)(2)).

benefits are denied."[18] If he is unable to perform his prior work, the analysis proceeds to step five.

At the fifth and final step, the burden shifts to the Commissioner to show that the claimant has the RFC to perform other work in the national economy.[19] The ALJ must determine whether "there are sufficient jobs in the national economy for a hypothetical person with the claimant's impairments, given his age, education, and work experience."[20] "In posing hypothetical questions to the [vocational expert], the ALJ is required to identify only those physical and mental impairments borne out by the evidentiary record."[21] If the Commissioner cannot establish that the claimant retains the capacity "to perform an alternative work activity and that this specific type of job exists in the national economy," the claimant is entitled to benefits.[22]

### III.     Discussion

Plaintiff contends that the ALJ's RFC determination was not supported by substantial evidence because it was the product of an erroneous and unjustified evaluation of the physician's opinions and an improper evaluation of plaintiff's credibility and, thus, plaintiff's subjective complaints of pain and exertional limitations.

####     *A.     The ALJ Decision*

---

[18]*Bowen v. City of New York*, 476 U.S. 467, 471 (1986).

[19]*Williams v. Bowen*, 844 F.2d 748, 751 (10th Cir. 1988) (quoting *Yuckert*, 482 U.S. at 141).

[20]*Talamantes v. Astrue*, 370 F. App'x 955, 959 (10th Cir. 2010) (internal quotation, citations, and alterations omitted).

[21]*Id.* (citing *Decker v. Chater*, 86 F.3d 953, 955 (10th Cir. 1996)).

[22]*Williams*, 844 F.2d at 751.

4

Using the five step sequential process referenced above, the ALJ found that plaintiff: (1) is not presently engaged in substantial gainful activity; (2) has medically severe impairments of amputation with prosthesis for his right lower leg and status post fracture left wrist; and (3) has impairments that do not equal or meet one of the listed impairments. At Step 4, the ALJ found, based on his determination of plaintiff's RFC, that plaintiff could not perform his prior work as a CNC machinist. At Step 5, the ALJ found that plaintiff could perform other work in the national economy, such that plaintiff is not disabled. At issue in this case is the ALJ's determination, at Step 4, of plaintiff's RFC.

The ALJ found that plaintiff could perform "light work," and found plaintiff's physical limitations to be: (1) lift and carry ten pounds frequently and twenty pounds occasionally; (2) stand or walk for six of eight hours in a work day; (3) sit for six of eight hours in a workday; (4) occasionally climb ramp/stairs, balance, kneel, crouch and crawl; (5) never climb ladder/rope/scaffolds; (6) frequently stoop; (7) avoid concentrated exposure to wetness, fumes, gases and other respiratory irritants; and (8) avoid even moderate exposure to hazards.[23]

At the hearing, the ALJ then posed a hypothetical question to the vocational expert (VE), based on these exact limitations. In posing the hypothetical question, the ALJ referenced Exhibit 9F, the RFC assessment of Dr. Raju,[24] which the ALJ apparently adopted in full since the ALJ's RFC assessment is identical to Dr. Raju's RFC assessment. However, in posing the hypothetical question, the ALJ made the limitations more restrictive in two respects. First, instead of standing and walking for six of eight hours in a work day, the ALJ told the VE to assume plaintiff could

---

[23]R. at 12.

[24]R. at 314–23.

only stand and walk for two hours in a work day and that plaintiff needed a cane for balance while walking. Second, the ALJ told the VE to assume plaintiff could only do "floor work . . . shouldn't be on ladders, ropes or scaffolds."[25] The VE opined that although plaintiff could not perform his past work, he could perform sedentary, unskilled work and that such jobs were available in the national economy.[26]

### B. *Evaluation of Physicians' Opinions*

Three doctors rendered opinions concerning plaintiff's exertional limitations. Two of these doctors, Raju and Wheeler, were state agency consulting doctors who did not examine plaintiff. Both Dr. Raju and Dr. Wheeler completed RFC assessments. The third doctor, Estivo, was not a treating physician, but did examine plaintiff. Dr. Estivo did not perform a complete RFC assessment, but did render findings pertaining to some of the exertional limitations addressed in an RFC assessment.

Plaintiff argues that the ALJ did not properly evaluate the opinions of the examining and consulting physicians. Plaintiff argues that the ALJ relied upon the opinion of Dr. Raju without mentioning it or explaining why and that he expressly gave significant weight to Dr. Estivo's opinion, yet rejected part of Dr. Estivo's opinion without adequate explanation. Plaintiff further argues that the ALJ expressly gave less weight to Dr. Wheeler's opinion but did not distinguish what he accepted and what he did not accept in that opinion.

Plaintiff first contends that the ALJ erred in relying upon Dr. Raju's opinion, while neither mentioning, discussing or explaining his reliance upon such. As Judge Lungstrum

---

[25]R. at 40.

[26]R. at 40-41.

explained in *McDonald v. Barnhart*,[27] it is not critical that the ALJ mention reliance upon the opinion by name, so long as such reliance is implicit in the ALJ's decision. Here the ALJ's reliance upon and adoption of Dr. Raju's RFC assessment was implicit and clear, for the hypothetical question the ALJ posed to the VE was largely consistent with Dr. Raju's RFC assessment.[28]

Plaintiff also claims that reliance upon Dr. Raju's opinion was improper because Dr. Raju merely filled out a checklist form for an RFC assessment. But, Dr. Raju went further than that. He provided lengthy substantive comments to explain those checked boxes.[29] Thus, these were not conclusory opinions, as Dr. Raju explained the reasons behind them, and the ALJ could properly consider them.[30]

Plaintiff further argues that the ALJ erred in failing to explain his statement that he was placing less weight on the opinion of consulting physician Dr. Wheeler, in that the ALJ did not distinguish which parts of Dr. Wheeler's opinion he accepted and which he did not. Again, this

---

[27]358 F. Supp. 2d 1034, 1039 n.2 (D. Kan. 2005) (finding that the weight the ALJ granted to a treating physician's opinion was "implicit in the ALJ's decision"); *see also Seymore v.Apfel*, No. 97-5068, 1997 WL 755386 *1 (10th Cir. Dec. 8, 1997) (finding that although it would have been preferable for the ALJ to discuss a State agency medical consultant's opinion, his failure to directly mention it was not reversible error because the ALJ stated that he had considered all the evidence and the consultant's opinion was, for the most part, consistent with the ALJ's decision); *Turnetine v. Astrue*, No. 09-1183-WEB, 2010 WL 4025597, at *5 (D. Kan. June 3, 2010) (finding that "it does appear that the ALJ relied on the opinions of" the State agency medical consultant where ALJ asked vocational expert to consider limitations offered by consulting physician).

[28]As further discussed below, the ALJ's hypothetical question departed from Dr. Raju's opinion in several respects, asking the VE to assume more restrictive limitations with respect to standing, walking, climbing and balancing.

[29]R. at 315-16, 318-21.

[30]*See Williams v. Bowen*, 844 F.2d 748, 757 (10th Cir.1988) (finding that a checklist consisting solely of boxes checked to indicate conclusions was not substantial evidence when "standing alone, unaccompanied by thorough written reports or persuasive testimony").

7

is implicit in the hypothetical question that the ALJ posed to the VE.  Dr. Wheeler opined that plaintiff could lift twenty-five pounds frequently and fifty pounds occasionally; the ALJ's hypothetical question assumed plaintiff could lift only ten pounds frequently and twenty pounds occasionally.  Dr. Wheeler opined that plaintiff could stand, walk or sit six of eight hours in a work day.  The ALJ's hypothetical question assumed plaintiff could sit six of eight hours in a work day, but could only stand or walk two of eight hours in a work day; thus, accepting Dr. Wheeler's opinion on the exertional limitation in sitting, but not in standing or walking.  Moreover, the ALJ implicitly rejected Dr. Wheeler's finding that plaintiff had no non-exertional limitation with respect to environmental conditions.  The ALJ obviously disagreed with this finding of Dr. Wheeler, for his hypothetical question assumed, consistent with the opinion of Dr. Raju, that plaintiff needs to avoid concentrated exposure to wetness, fumes, gases and other respiratory irritants, and needs to avoid even moderate exposure to hazards.

Plaintiff also contends that the ALJ's statement that he gave less weight to the opinion of Dr. Wheeler because he did not examine plaintiff, is an insufficient explanation.  This, the Court finds mystifying because Dr. Wheeler opined that plaintiff had fewer exertional and non-exertional limitations than plaintiff claims or than the other physicians found.  In any event, it is proper for the ALJ to give less weight to the opinion of a consulting physician than the opinion of an examining physician.[31]  Indeed, the ALJ must give the most weight to a treating source's opinion, if supported by the evidence, while opinions of sources who have examined the claimant are given less weight, and opinions of sources, such as the sources in this case, who

---

[31]*Talbot v. Heckler*, 814 F.2d 1456, 1463 (10th Cir. 1987).

merely review the claimant's records are to be given the least amount of weight.[32]

Here, there was no opinion from a treating source, only opinions of an examining source, Dr. Estivo, and two consulting sources, Drs. Raju and Wheeler. It was entirely proper for the ALJ to consider that Dr. Wheeler was a consulting source and to give his opinion less weight for that reason, among others. It is also clear that the ALJ gave lesser weight to the opinion of Dr. Wheeler because his opinion was not consistent with other substantial evidence in the record.[33] To be sure, the ALJ gave more weight to the opinion of the other consulting source, Dr. Raju, as discussed above. This is implicit in the hypothetical question to the VE and the ALJ's ultimate findings. But it is also clear that Dr. Raju's opinion was given more weight because it was supported by other substantial evidence in the record, including some of the findings of the examining physician, Dr. Estivo.[34]

The ALJ expressly gave significant weight to the opinion of examining physician Dr. Estivo. Notably, Dr. Estivo did not offer an express opinion on all of the exertional limitations, as Drs. Raju and Wheeler did. But with respect to the opinions Dr. Estivo offered, the ALJ's

---

[32]*Id.*

[33]*See Goatcher v. U.S. Dep't of Health & Human Servs.*, 52 F.3d 288, 290 (10th Cir. 1995) (citing 20 C.F.R. § 404.1527(d)(2)-(6)) ("the ALJ must consider the following specific factors to determine what weight to give any medical opinion: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.").

[34]*See Kizer ex rel. Kizer v. Barnhart*, No. 04-1394-JTM, 2006 WL 681115, at *4 (D. Kan. Mar. 14, 2006) (upholding the ALJ's decision to give substantial weight to the opinion of a state agency reviewing psychologist, noting that "[i]n appropriate circumstances, opinions from State Agency medical and psychological consultants and other program physicians and psychologists may be entitled to greater weight than the opinions of treating or examining sources." (quotation omitted)).

ultimate findings largely embraced Dr. Estivo's opinions. For example, Dr. Estivo opined that plaintiff could lift ten pounds. Dr. Estivo did not indicate whether plaintiff could lift ten pounds frequently or only occasionally. But, the ALJ nonetheless adopted this opinion, and found that plaintiff could lift ten pounds frequently. This finding was consistent with the nonspecific opinion of Dr. Estivo regarding the exertional limitations on lifting; it was also consistent with the opinion of Dr. Raju. It was further justified by plaintiff's own testimony that he could lift forty pounds if he was not moving.

Other components of Dr. Estivo's opinion were given significant weight by the ALJ and were adopted as findings and components of his hypothetical question to the VE. Dr. Estivo opined that plaintiff could do ground level work only; the ALJ told the VE to assume that plaintiff could only do floor work and no work from ladders, ropes or scaffolding. In giving credence to Dr. Estivo's opinion that plaintiff could only work from the ground level, the ALJ effectively discredited that part of Dr. Raju's opinion that plaintiff could occasionally climb. Dr. Estivo further opined that plaintiff was "somewhat unbalanced" and noted that plaintiff used a cane for balance.[35] The ALJ's findings and hypothetical question adopted this limitation and the need for a cane. In giving credence to Dr. Estivo's opinion that plaintiff had problems with balance, the ALJ effectively partially discredited the opinions of Drs. Raju and Wheeler that plaintiff could occasionally balance.

Plaintiff contends that in finding that plaintiff could frequently stoop, and could occasionally kneel, crouch or crawl, the ALJ improperly disregarded Dr. Estivo's opinion that plaintiff had difficulty with heel and toe walking on the left due to unsteadiness and could not

---

[35]R. at 309-10.

tandem walk, hop, squat, or rise from a squatting position.[36] As defendant posits, Dr. Estivo's opinion did not directly address stooping, kneeling, crouching or crawling; Dr. Raju's opinion did. Thus, it is conjecture to say that the ALJ discredited Dr. Estivo concerning these particular exertional limitations. Moreover, Dr. Raju's opinion concerning these exertional limitations was expressly founded on his consideration of Dr. Estivo's findings about plaintiff's difficulties with balance, sharp shooting pain that is alleviated by sitting, and other findings such as "Neg SLR. L dorsi/plantar flexion normal, no atrophy/pain/parathesia, LLE. Full ROM L spine. No muscle spasm."[37]

Still other components of Dr. Estivo's opinion were obviously given weight by the ALJ. While Dr. Estivo did not offer an opinion on the duration that plaintiff could stand or walk, he noted that plaintiff had reported sharp shooting pain in his leg, pain in his neck and back, aggravated by moving objects and alleviated when he sat down. The ALJ obviously gave credence to this fact. The ALJ did not adopt the opinions of Drs. Raju and Wheeler that plaintiff could stand or walk six of eight hours in a work day. Instead, he found, and told the VE to assume, that plaintiff could only stand or walk two hours in an eight hour work day. In so doing, the ALJ surely considered all the evidence in the record; the ALJ expressly stated such.[38]

Other evidence in the record supports a finding that plaintiff could stand or walk, if not six of eight hours a work day, at least two of eight hours a work day. Treatment notes at Capitol

---

[36] R. at 310.

[37] R. at 316.

[38] R. at 12-14 ("After careful consideration of the entire record . . . . the undersigned has considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, . . . In sum, the above residual functional capacity assessment is supported by the medical record and testimony as a whole.").

11

Orthopedic Center in November 2008 stated that plaintiff reported that he was able to walk where he wanted, was not limited in lifestyle and was wearing his prosthesis most of the day. February 2009 treatment notes of Capitol Orthopedic Center noted that the prosthesis fit well and plaintiff was happy with the fit and feel of the prosthesis.[39] And, after this visit in February 2009, plaintiff never returned to Capitol Orthopedic Center for further fittings or adjustments to his prosthesis.[40] Dr. Esquivo's examination in May 2009 found that plaintiff had full range of motion in his lumbar spine, with no tenderness. Straight leg raise tests were negative and x-rays revealed no bone pathology.[41]

In short, the ALJ largely adopted the opinion of consulting physician Dr. Raju concerning plaintiff's exertional limitations, but found more restrictive limitations, based on the opinion of examining physician Dr. Estivo, and other substantial evidence in the record, including objective medical evidence. The ALJ properly considered all of the evidence, and it was entirely appropriate for him not to adopt wholesale any particular opinion, but to determine the plaintiff's RFC based on all of the evidence before him.[42] Indeed, it is the role of the ALJ as trier of fact, and his duty, to resolve conflicts in the medical evidence.[43]

### C.    *Evaluation of Plaintiff's Credibility and Subjective Complaints*

---

[39]Tr. 315

[40]Tr. 304-305

[41]Tr. 310

[42]*See James v. U.S. Dep't of Health & Human Servs.*, No. 94-6124, 1995 WL 65454, at *1 (10th Cir. Feb. 17, 1995) (holding that regulations do not unequivocally require an RFC report from either a consulting physician or a treating physician and noting earlier holding that RFC forms could be completed by ALJs without medical assistance, where RFC forms previously were prepared by medical consultants at earlier stages of the case).

[43]*See Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 801 (10th Cir. 1991).

In considering all of the evidence, the ALJ's determination was also based on certain testimony and subjective complaints of plaintiff, which the ALJ found credible, even while finding other subjective complaints of plaintiff not credible. The Court now turns to plaintiff's argument that the ALJ erred in his analysis of plaintiff's credibility and thus his findings concerning plaintiff's subjective complaints. Plaintiff contends that the ALJ erred in evaluating his credibility by improperly considering his felony conviction, unjustifiably discrediting his testimony about pain in his left wrist, and erroneously considering his work history. This, plaintiff argues, led the ALJ to erroneously discredit plaintiff's subjective allegations concerning his pain and exertional limitations. Plaintiff also argues that the ALJ did not clarify which testimony or allegations he credited, and which he found lacking in credibility.

In *Luna v. Bowen*,[44] the Tenth Circuit articulated the proper framework for analyzing evidence of nonexertional symptoms, including pain. The relevant factors are (1) whether the objective medical evidence establishes the claimant has a physical or mental impairment capable of producing the nonexertional limitation at issue; and (2) if so, whether a loose nexus exists between the impairment and the nonexertional limitation alleged; and (3) if so, whether the nonexertional limitation is disabling based on all objective and subjective evidence.[45] Some of the possible factors that the ALJ should consider at the final step include the levels of medication and their effectiveness, the extensiveness of the attempts (medical or non-medical) to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, the motivation of and relationship

---

[44] 834 F.2d 161 (10th Cir. 1987)

[45] *Id.* at 163-65; *Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994).

between the claimant and other witnesses, and the consistency or compatibility of non-medical testimony with objective medical evidence.[46]

To be sure, the ALJ did not entirely credit or discredit plaintiff's subjective complaints. But the ALJ's decision identifies what he found credible and what he found not credible amongst plaintiff's subjective allegations, explicitly and implicitly. The ALJ obviously gave credence to plaintiff's subjective complaints about his ability to lift when he expressly explained that his finding was based on "the claimant's credible pain since the accident which would lessen the claimant's ability to lift heavier weight."[47]

The ALJ also apparently found credible plaintiff's subjective complaints about his balance and the need to use a cane because the ALJ included those limitations in the RFC assessment. These limitations are consistent not only with plaintiff's complaints, but also with Dr. Estivo's findings. Other evidence in the record suggested that plaintiff did not consistently need to use a cane. The treatment records at Capitol Orthopedic Center reflect that on January 12, 2009 and January 26, 2009, plaintiff presented at the clinic walking unassisted.[48] On January 12, 2009, he was seen again and he was walking unassisted. Nonetheless, the ALJ gave credit to plaintiff's subjective complaint and Dr. Estivo's opinion, which he evaluated to be more substantial evidence.

On the other hand, the ALJ only partially credited plaintiff's subjective complaints about pain in his leg and the incumbent difficulty he had with standing and walking. The ALJ found

---

[46]*See Hargis v. Sullivan*, 945 F.2d 1482, 1489 (10th Cir. 1991); *Wiley v. Chater*, 967 F. Supp. 446, 450 (D. Kan. 1997).

[47]R. at 14.

[48]R. at 304-05.

14

that plaintiff had such pain that he could only walk or stand two out of eight hours a work day, rather than the six of eight hours that Drs. Raju and Wheeler opined. The ALJ also found that "his testimony and allegations are not supported by the medical record, to the extent alleged."[49] The ALJ found "that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment."[50]

On appeal, plaintiff focuses on the ALJ's apparent discrediting of plaintiff's complaints of pain in his left wrist. But the ALJ clearly explained why he discredited those complaints in part, and further pointed to other credible, substantial evidence in the record that discredited this complaint. The ALJ stated that at the hearing in September 2009, he observed that plaintiff used his cane with his left hand, "which seems to be inconsistent with his allegations of wrist pain."[51] Plaintiff argues that it is recommended that one use the hand opposite to the leg for which one needs the support of a cane. Nonetheless, there is no evidence that plaintiff attempted to use another type of assistive device. He stopped using a walker once he received his first prosthesis. And, although plaintiff complains of pain in his prosthesis and the inability to put weight on that leg, he has not returned to his treating provider since September 2009 for refitting or adjustment.[52] This was other evidence the ALJ properly considered. Moreover, the objective

---

[49]R. at 13.

[50]R. at 13.

[51]R. at 14.

[52]*See Shepherd v. Apfel*, 184 F.3d 1196, 1202 (10th Cir.1999) (finding that ALJ's credibility determination supported by claimant's failure to seek medical treatment); *Hargis v. Sullivan*, 945 F.2d 1482, 1489 (10th Cir. 1991) (explaining that frequency of medical contacts may be considered in determining credibility).

medical evidence is inconsistent with plaintiff's subjective complaints of pain. Dr. Estivo noted that plaintiff had generalized pain in his left wrist with palpation, but he had full range of motion and no atrophy in his wrists and hands.[53]

Plaintiff also takes issue with the ALJ considering his prior felony conviction and spotty work history in concluding that plaintiff was not fully credible. Contrary to plaintiff's argument, the ALJ did not base his entire credibility determination on plaintiff's prior felony conviction. Moreover, it was entirely proper for the ALJ to consider plaintiff's felony conviction, among other factors, in evaluating plaintiff's credibility. Plaintiff argues that his felony conviction for manufacturing methamphetamine is not a crime of dishonesty or moral turpitude so it should not have been considered. Although plaintiff cites to the rules of evidence concerning other acts, wrongs and crimes,[54] and concerning character evidence,[55] he pointedly fails to cite to the rule that allows impeachment of a witness with a prior felony conviction *or* a misdemeanor conviction for crimes of dishonesty.[56] It was proper for the ALJ to take into consideration, plaintiff's prior felony conviction even if it was not a crime of dishonesty, in conjunction with other factors.[57]

Plaintiff also objects to the ALJ considering his prior work history. The ALJ expressly

---

[53]R. at 310.

[54]Fed. R. Evid. 404(b).

[55]Fed. R. Evid. 608.

[56]Fed. R. Evid. 609.

[57]*See Bolton v. Barnhart*, No. 04-5014, 2004 WL 2677695, at *4 (10th Cir. Nov. 24, 2004) (considering felony convictions for writing fraudulent checks); *Harter v. Astrue*, No. CV 08-1193-AC, 2010 WL 3938269, at *1 (D. Or. Oct. 1, 2010) (burglary conviction was one of several proper bases for a credibility decision); *c.f. Salazar v. Astrue*, No. CIV-07-912-L, 2008 WL 5046403, at *6 (W.D. Okla. Nov. 20, 2008) (a DUI conviction alone is not a sufficient basis to determine credibility);

stated that in assessing plaintiff's credibility, he considered that plaintiff had a poor work record even before his injury. Work history is a proper factor to consider is assessing credibility.[58] Plaintiff argues that in considering his prior work history, the ALJ should have considered the most recent history from 2006 to 2008, when he was out of prison, and also the fact that he was to begin a new job shortly after the day of his injury. But as the defendant posits, the ALJ properly considered the plaintiff's much longer, spotty work history, over a period of years.

## IV. Conclusion

The ALJ's credibility determination was based on consideration of proper factors, was sufficiently detailed and was supported by substantial evidence. The ALJ properly evaluated, and sufficiently explained his evaluation of the opinions rendered by the physicians. The ALJ carefully determined the exertional and non-exertional limitations, based upon his proper evaluation of the entire record. Thus, the ultimate conclusion, that the plaintiff is capable of performing light work, sedentary unskilled work, for which there are jobs available in the national economy, is affirmed.

**IT IS THEREFORE ORDERED** that the Commissioner's decision be and hereby is **AFFIRMED**.

**IT IS SO ORDERED.**

Dated: June 8, 2011

 S/ Julie A. Robinson
JULIE A. ROBINSON
UNITED STATES DISTRICT JUDGE

---

[58] *See Bean v. Chater*, 77 F.3d 1210, 1213 (10th Cir. 1995); *Billups v. Barnhart*, 322 F. Supp. 2d 1220, 1226 (D. Kan. 2004).